DELBERT L. BOOTH v. THE MAJESTIC MANUFACTURING COMPANY.

*Authority of agent.*

A finding that defendant's traveling agent had authority to employ the plaintiff as a salesman in a store, the proprietors of which had been given by said agent the exclusive agency in their city for the sale of defendant's wares, is supported by evidence that the defendant accepted the contract made with

the proprietors of the store, and shipped to them the wares to be sold; that said contract provided that the defendant should advertise, and in that way aid said proprietors in making sales, also for the hiring of a party to aid in the advertising, for which purpose, among others, the plaintiff was employed; that said agent came to said city to establish an exclusive agency, and that all he did in relation thereto was ratified and approved by the defendant; that a contract of advertising was entered into by the defendant through the agent; that some considerable advertising was done, one bill for which the defendant paid, and afterwards wrote to the newspaper company that the agent had some little leeway, but had not notified the defendant of the bill before, and requested the newspaper company not to accept any expense on defendant's account in the future, except with a written order from defendant's office, but stating that defendant hoped to do some further advertising the next spring with the newspaper company.

Error to Wayne. (Carpenter, J.)   Argued January 25, 1895.  Decided June 4, 1895.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Lemuel H. Foster,* for appellant.

*Haug & Yerkes,* for plaintiff.

Long, J.   Defendant is a corporation engaged in the manufacture of stoves, ranges, etc., at St. Louis, Mo., and had in its employ as an agent one J. W. Johnson. Johnson came to Detroit in the middle of December, 1892, and made a contract with Stearns Bros. for the exclusive agency for the sale of the defendant's stoves, etc., in Detroit. At about the same time he arranged with the plaintiff, at the sum of $100 per month, to enter the defendant's employ as salesman in the Stearns store, to exhibit the stoves, advertise them, and send out circulars, etc.   He was so employed for two months.   It is for this service that this action is brought. Plaintiff recovered, and defendant brings error.

The principal claim made by defendant is that there was no evidence in the case showing, or tending to show, that Johnson had any authority to make the contract with plaintiff. The contract made with Stearns Bros. was that Johnson was to expend $500 for them in newspaper advertising, or in any other way that they desired to advertise, either in street-car signs or in newspapers. He was to send them a cook for one month, and have a salesman for two months, or, if a cook was not wanted, then he was to furnish a salesman for three months. Under this arrangement Stearns Bros. were to have the exclusive agency in Detroit, and to have sent to them 20 ranges at once. The 20 ranges were sent to Detroit from St. Louis, Mo. While these negotiations were pending, Johnson asked if they could not find a salesman, and the plaintiff was mentioned to him, and hired by him for two months. He worked the full time, doing the work required, when some trouble apparently arose between the defendant company and its agent, Johnson, and the contract made by him with plaintiff was repudiated. It claimed that Johnson was merely a traveling salesman, and had no greater power or authority. It appears that, some time previous to the arrangement made by Johnson with Stearns Bros. and the plaintiff, Johnson had ordered some advertising for the defendant company from the Detroit Free Press, and in a letter to the Free Press of February 7, 1893, it says of Johnson "that he had some little leeway, but had not notified us of this before." The defendant company shipped the stoves to Stearns Bros., and apparently recognized them as its exclusive agent in Detroit. The defendant also paid the Free Press for advertising done by the plaintiff while acting under the contract with Johnson.

The fact of Johnson's agency is not disputed, but the contention is that he was but a traveling salesman, and therefore the arrangement with plaintiff was entirely outside of the scope of his employment. It is undoubtedly true that, if Johnson was a mere traveling salesman,

he had no authority to hire the plaintiff, and the plaintiff could not recover. An officer of the defendant company at St. Louis testified that Johnson was employed simply as an agent for the sale of the company's goods, at a monthly salary, and under an oral contract of no specified duration; that he had no authority to make contracts except for the sale of goods; that he had no right to buy anything for the company, to pledge its credit in any way, or to employ any agent for the company. This, standing alone and uncontradicted, would debar the plaintiff from recovery. But it is not uncontradicted. The dealings of the company, through Johnson, with other parties, contradict this. He did make the contract with Stearns Bros., and the company accepted its terms, and shipped the stoves. That contract specified that the company should advertise, and in that way aid Stearns Bros. in making sales. It also provided for the hiring of a party to aid in the advertising. The plaintiff was employed for this very purpose. This is some evidence that Johnson had larger powers than a mere salesman. He apparently came to Detroit to establish an exclusive agency, and all he did in relation thereto was ratified and approved by the defendant, except the payment of plaintiff. Perhaps from this alone the jury would not have been justified in saying that Johnson had power to bind the defendant for plaintiff's payment. But there is other evidence in the case which shows larger powers vested in Johnson. As early as May, 1892, a contract of advertising was entered into by the company, through Mr. Johnson, with the Detroit Free Press. While this was subject to the approval of the management, it seems that some considerable advertising was done, and in November, 1892, the company paid a bill to the Free Press Company, and promised to send more "as soon as we get straightened out in Detroit." On February 7, 1893, the company again wrote the Free Press:

"Replying to your favor of the 6th inst., will say that Mr. Johnson had some little leeway, but had not notified

us of this before. In future, please accept no expense at our account, except with a written order from this office. We hope, however, to do some further advertising with you this spring."

It is wholly improbable that Johnson was clothed with no greater authority than that of a traveling salesman, when we view his acts in the Stearns matter and the Free Press contracts. What the little leeway was which Johnson had is not made to appear except by his conduct in making contracts which were ratified by the company. There was evidence, therefore, from which the jury might well find that Johnson was something more than a mere traveling salesman, and that the contract made by him with plaintiff was within the scope of his employment. The case was fairly submitted to the jury.

The judgment must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.